# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| TRANSWESTERN PIPELINE COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) 2:07-cv-02312 JWS ) |
| vs. | ) ORDER AND OPINION ) |
| 46.78 ACRES, MORE OR LESS, OF PERMANENT EASEMENT LOCATED IN MARICOPA COUNTRY, *et al.*, | ) [Re: Motions at Docket 149, 150, 151] ) ) ) |
| Defendants. | ) ) |

## I.  MOTIONS PRESENTED

At docket 149, plaintiff Transwestern Pipeline Company, LLC ("Transwestern") requests an order precluding the expert opinion and report of Ian R. Dowdy.  At docket 157, defendants First American Title Insurance Company, as Trustee under Trusts 8435 and 8436,[1] and WVSV Holdings, LLC ("defendants") oppose the motion. Transwestern replies, and defendants sur-reply at dockets 166 and 176, respectively.

---

[1]Also referred to as Trusts 3435 and 3436.

At docket 150, Transwestern requests an order precluding Douglas Wolf's expert opinion. At docket 159, defendants oppose the motion. Transwestern replies, and defendants sur-reply at dockets 167 and 177, respectively.

At docket 151, Transwestern requests an order precluding James Chalmers from testifying or offering his report regarding severance damages based upon an 800-feet safety zone and a 10 % reduction in value to the remainder of the subject property. At docket 160, defendants oppose the motion. Transwestern replies, and defendants sur-reply at dockets 168 and 176, respectively. Oral argument was requested on all three motions, but it would not assist the court.

## II. BACKGROUND

This action involves Transwestern's condemnation of property for an easement transecting a parcel of defendants' property located in the Town of Buckeye, Arizona, for the purpose of constructing the approximately 260-mile expansion of Transwestern's existing interstate natural gas pipeline in accordance with a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission ("FERC") on November 15, 2007.[2] The parties refer to the subject property as the Sun Valley property or Parcel MA 169. WVSV Holdings, LLC is the beneficial owner of the subject property, while First American Title Insurance Company, as Trustee under Trusts 8435 and 8436, holds the title to the majority of the property.[3]

---

[2]Doc. 65.

[3]Doc. 161-1 at p. 5.

-2-

By order dated June 19, 2008, the court granted the parties' stipulation allowing Transwestern's immediate entry and possession of a 50-foot-wide permanent easement, temporary workspace, and temporary access roadway transecting the subject property. The remaining issues in this condemnation action involve determining the fair market value of the 50-foot-wide easement, and the existence and amount of severance damages to the remaining property. In its briefing, Transwestern defined "severance damages" as "any decrease in market value to the unencumbered portion of the parcel located outside of the permanent easement taken by Transwestern, arising from the taking of the easement."[4]

Defendants proffered the expert testimony and report of Ian R. Dowdy, an urban planner who worked as an assistant planner/interim senior planner for the Town of Buckeye for two years and as a senior planner for Jacobs Engineering for 19 months, during which time he worked on the Sun Valley Community Master Plan ("CMP"). Defendants indicate that Dowdy's expert testimony "involves the market perceptions of a potential purchaser of the Sun Valley project in the summer of 2008 concerning whether the Town of Buckeye would require a setback of residential development from a gas transmission pipeline and how, depending on the size of any setback, such a setback would affect the land planning of the Sun Valley project."[5] In his expert report, Dowdy concludes,

> The Transwestern pipeline, although buried below the ground and relatively unobtrusive to the daily lives of community residents, presents a

---

[4] Doc. 152 at p. 2.

[5] Doc. 157 at p. 15.

significant impact to the value of the Sun Valley Community. As of the date of value in June 2008, I conclude that a reasonable buyer would likely consider the existence of the pipeline as posing significant impact to the Sun Valley Community. The buyer would conclude the risk that mitigation will be required is significant enough to consider the impact of such methods on the development, including significant design concerns and a loss of developable land.[6]

Dowdy specifically opines that as of the date of value in June 2008, a hypothetical buyer "might conclude that either the Department of Real Estate and/or the Town of Buckeye would likely require a notification zone," "would conclude that the Town, given its long history of unpredictable and stringent hazardous material policies, may impose a setback requirement," "would likely consider the setback to be around 800 feet," and "would find it necessary to consider the impact of the pipeline to the existing plans."[7]

Defendants also proffer the expert testimony and report of Douglas G. Wolf, who "has over 30 years of multidisciplinary environmental permitting, compliance and management consulting experience."[8] In their response brief, defendants indicate that Wolf "discusses the historical, statistical and physical reasons, all discoverable by a knowledgeable buyer, why a local government such as the Town [of Buckeye] might impose a setback."[9] In addition to Wolf's testimony, defendants proffer Wolf's expert opinion report of June 2009, titled "Potential Hazards and Risks Associated with the Transwestern Natural Gas Transmission Pipeline Maricopa County, Arizona."[10] Wolf's

---

[6] Doc. 149-5 at p. 17.

[7] Doc. 149-4 at p. 5, doc. 149-5 at pp. 1-2.

[8] Doc. 150-4 at p. 2.

[9] Doc. 159 at p. 11.

[10] Doc. 150-5 at p. 3, *et seq.*

report addresses "potential hazards and high consequences posed by similar pipeline diameters and pressures to the one operated by Transwestern Natural Gas Transmission Pipeline."[11]  In his report, Wolf concludes,

> There are some limited mitigation efforts that would act to reduce the probability for high consequence events affecting the surrounding population.  However, if a high consequence event occurs, only an increase in the right-of-way in order to set back structures and people would act to reduce injuries and possible fatalities.  From the information reviewed and discussed in this report, events involving large-diameter and high-pressure pipelines have resulted in significant consequences (severe burns, property damage, and fatalities) to the immediate surrounding population.[12]

Finally, defendants proffer the expert testimony and report of James Chalmers, a certified general real estate appraiser and principal of Chalmers & Associates, LLC, a firm which engages in economic and real estate consulting and litigation.  Chalmers was retained by defendants to prepare an appraisal providing "an opinion of Just Compensation resulting from the taking of 46.78 acres for a permanent easement for the installation and operation of Transwestern's pipeline through portions of the Subject Property, as of June 19, 2008."[13]  In his appraisal, Chalmers assumes that the unencumbered value of the subject property before the installation of the pipeline was $25,000 per acre and concludes that the just compensation resulting from the taking of 46.78 acres for the pipeline easement is $50,029,900.[14]  The just compensation of $50,029,900 is made up of three parts: value of the part taken ($233,900), plus rental of

---

[11]Doc. 150-5 at p. 7.

[12]Doc. 150-7 at p. 6.

[13]Doc. 151-4 at p. 10.

[14]*Id.* at p. 5.

the temporary construction easement ($103,000), plus severance damages ($49,693,000).[15] In his appraisal report, Chalmers states that "Town consultants are talking about setbacks for all habitable structures of between 800 and 1200 feet, and the Town has a history of concerns with proximity of development to hazards."[16] Based on the above, Chalmers' concludes that "it is reasonable to assume that an informed prospective buyer would want to carefully investigate the implications of a required setback of at least the minimum distances discussed, i.e. 800 feet."[17] Chalmer's calculation of severance damages is based on his estimate of a resulting 80% reduction of value in the setback area, and a 10% reduction in value in the subject property outside of the setback.[18]

### III. DISCUSSION

"Federal Rule of Evidence 702 allows admission of 'scientific, technical, or other specialized knowledge' by a qualified expert if it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"[19] "Rule 702 requires that a testifying expert be 'qualified as an expert by knowledge, skill, experience, training, or education.'"[20] "The Advisory Committee's Notes to [Rule 702] specifically cite

---

[15] Doc. 151-6 at p. 6.

[16] Doc. 151-5 at p. 17.

[17] *Id.*

[18] Doc. 151-6 at p. 4.

[19] *Esayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (quoting Fed. R. Evid. 702).

[20] *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004 (quoting Fed. R. Evid. 702)).

'landowners testifying to land values' as 'within the scope of the rule.'"[21] Expert testimony is admissible under Rule 702 if it is both relevant and reliable.[22] "The trial court must act as a 'gatekeeper' to exclude 'junk science' that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."[23]

**Ian R. Dowdy's Expert Opinion and Report**

Transwestern argues that Ian Dowdy should be precluded from offering his opinion relating to a hypothetical 800-foot setback, the Town of Buckeye's likelihood of enacting such a setback, and the possible impact of a setback on the subject property's development on the grounds that Dowdy is not qualified to offer such opinions, his methods are unreliable, and his opinions amount to unsupported conjecture. Defendants argue that Dowdy's experience in urban planning qualifies him to provide opinions as to "whether a market participant in the summer of 2008 could anticipate that the Town would impose a setback on the Sun Valley project, as well as the likely size of the setback imposed and the effect of such a setback on development of the project."[24]

The court first considers whether Dowdy is qualified as an expert. Defendants contend that Dowdy is qualified by his experience as an urban planner, and particularly his two years as a town planner for the Town of Buckeye. While "the text of Rule 702

---

[21] *In re Tamen*, 22 F.3d 199, 206 (9th Cir. 1994) (citing Fed. R. Evid. 702 advisory committee's notes).

[22] *Daubert v. Merrell Dow Phars., Inc.*, 509 U.S. 579, 589 (1993).

[23] *Mukhtar*, 299 F.3d at 1063 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999)).

[24] Doc. 157 at p. 13.

expressly contemplates that an expert may be qualified on the basis of experience," the advisory committee notes emphasize that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[25] Although Dowdy purports to rely on his experience as an urban planner, Dowdy has failed to explain how that experience qualifies him to opine as to "the market perceptions of a potential purchaser of the Sun Valley project in the summer of 2008,"[26] why his experience as an urban planner is a sufficient basis for his opinion, and how his experience is reliably applied to the facts in this matter.

Transwestern next argues that Dowdy's opinion is inadmissible because it is not reliable. The court concurs. Dowdy opines that a hypothetical buyer in June 2008 would anticipate that Buckeye would impose an 800-foot setback requirement and that such a setback requirement would affect the development and fair market value of the Sun Valley project. Dowdy does not provide any basis for his opinion. In his deposition, Dowdy acknowledges that he has not conducted any market analysis or surveys and that he talked to only one potential purchaser of property with the Sun Valley development in forming his opinion on what a hypothetical buyer would think.[27] As to how he determined what a hypothetical buyer would think, Dowdy stated, "Based on my

---

[25] Fed. R. Evid. 702 advisory committee's note.

[26] Doc. 157 at p. 15.

[27] Doc. 149-6 at pp. 37, 38, 42.

experience and dealing with people in similar situations, I concluded that that is probably what this person would think."[28] The subject of an expert's testimony must be specialized knowledge, which connotes "more than subjective belief or unsupported speculation."[29] Dowdy's opinion is inadmissible because it amounts to speculation. For the reasons set out above, Dowdy's expert report, which is also based on assumptions which are purely speculative, is also inadmissible.

**Douglas Wolf's Expert Opinion and Report**

Transwestern first argues that Douglas Wolf's testimony and expert report are inadmissible because Wolf is not qualified "to provide expert testimony as to the appropriate setback for a natural gas pipeline for residential development."[30] Transwestern points out that while Wolf may be an expert in air quality, his is not an expert concerning the appropriate "safety zone" in the vicinity of a natural gas pipeline.

Defendants argue that Wolf is not offered for the expert opinion that there should be a setback requirement from the Transwestern pipeline beyond the 50-foot easement established by FERC; rather, Wolf details "the publicly-known engineering considerations" that might lead the Town of Buckeye to impose a setback requirement, provides "publicly available historical information about prior pipeline failures that rightfully cause concern in the development community, and provide[s] persuasive evidence as to the repercussions of pipeline explosions on neighboring properties."[31]

---

[28]Doc. 149-6 at p. 47.

[29]*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590 (1993).

[30]Doc. 150 at p. 9

[31]Doc. 159 at p. 4.

Defendants further argue that Wolf "presents facts and opinions that support the conclusion that a knowledgeable buyer would lower the price paid for Sun Valley because of the risk of imposition of setback in the future."[32]

Defendants contend that Wolf is qualified to offer the above opinions based on his "30 years of multidisciplinary environmental permitting, compliance and management consulting experience."[33] However, here, as with Ian Dowdy, defendants have failed to demonstrate how Wolf's experience as an environmental engineer with an emphasis on air quality leads to his conclusions about market perceptions or to his opinions about the risk of a "high consequences event" near a gas pipeline and the relative effectiveness of mitigation measures. Defendants have also failed to demonstrate why Wolf's experience is a sufficient basis for his opinion, and how that experience is reliably applied to the facts in this case.

To the extent that Wolf's proffered testimony and expert report purport to summarize publicly available information about prior pipeline failures and their effects on surrounding properties, Wolf's proffered testimony and expert report are inadmissible because they will not assist the trier of fact in determining the facts at issue here, namely the fair market value of the 50-foot-wide easement, and the existence and amount of severance damages to the remaining property. Wolf's expert report fails to make any connection between two prior pipeline failures and their alleged impact on the fair market value for the easement or any severance damages for the remainder of the

---

[32]Doc. 159 at p. 10.

[33]Doc. 150-4 at p. 2.

subject property. Accordingly, Wolf's expert opinion testimony and report will be excluded.

**James Chalmer's Expert Opinion and Report**

Transwestern next requests the court to exclude James Chalmers' testimony "on the issues of severance damages based upon (1) an 800' safety zone, and (2) a 10% reduction in value to the remainder of the parcel."[34] Transwestern argues that Chalmers is not qualified to opine as to safety setbacks and that his estimate of severance damages assuming an 800-foot setback is not based on sufficient facts or data. Transwestern further argues that Chalmers' opinion on severance damages is unreliable because it is based on events that are conjecture and are not reasonably probable to occur in the reasonably near future.

Defendants contend that they have offered expert witness Chalmers for "his opinion that a potential purchaser of the Sun Valley project in June 2008 would anticipate and take into account the likelihood that the local government, the Town of Buckeye [], would impose a setback on development in the Sun Valley project from the Transwestern natural gas transmission pipeline under the circumstances of this case."[35] Defendants further contend that Chalmers' estimate of an 80% reduction of value in the 800-foot setback area and a 10% reduction in value to the area outside of the setback area is admissible because it is based on Chalmers' professional experience dealing with easements and his experience as a real estate appraiser.

---

[34]Doc. 168 at p. 1.

[35]Doc. 160 at p. 3.

Because defendants concede that Chalmers' testimony and report are not offered on the issues of whether a setback is needed, and if so, the appropriate distance of a setback, the court considers whether Chalmers' opinion regarding the perceptions of a knowledgeable buyer and his severance damage estimates based on an 800-foot setback are admissible. Chalmers opines that a "knowledgeable and prudent buyer of the property would take into account the risk that the Town might impose a setback of the minimum amount of 800 feet."[36] However, in his deposition, Chalmers acknowledged that he had not talked with any developers concerning their perceptions of a decrease in value of the Sun Valley property due to the Transwestern pipeline extension, spoken to anyone who has purchased property around a natural gas pipeline, or studied the purchase and sales of properties that already have existing natural gas pipelines on the properties.[37] Chalmers further acknowledged that the risk of whether a setback will be imposed and the amount of any setback are two unknown variables.[38] Here, because the eventual imposition of a setback requirement is purely speculative and Chalmers has not provided any factual basis for his opinion that a hypothetical buyer in June 2008 would take into account the risk that the Town of Buckeye might impose an 800-foot setback, Chalmers' proffered opinion testimony is not reliable, and will be excluded.

---

[36]Doc. 160 at p. 10.

[37]Doc. 168-2 at pp. 13-16.

[38]Doc. 168-2 at p. 18.

Similarly, Chalmers' estimate of severance damages is not reliable because it assumes the imposition of a purely speculative 800-foot setback.  Moreover, Chalmers does not provide any relevant facts or data to support his opinion that an 800-foot setback would result in an 80% reduction in the value of the property within the 800-foot setback, and a 10% reduction in the value of the remaining property.  In his deposition, Chalmers states that there is no empirical data which supports his estimate of an 80 % reduction of value for property within the hypothetical 800-foot setback, nor a 10 % reduction in value of the remaining property.  Rather, Chalmers bases his estimates on his professional experience dealing with easements, his experience as an appraiser, and his "understanding of the market strength and the relative strength of the parties."[39]  However, Chalmers fails to demonstrate how his experience with utility easements or his experience as an appraiser leads to his opinion about the reduction in value, why his experience is a sufficient basis for his opinion, and how that experience is reliably applied to the facts in this case.  Accordingly, Chalmers' estimate of severance damages based upon an 80 % reduction in value in a speculative 800-foot setback zone and 10 % reduction in value for the remaining property is not reliable and will be excluded.  Defendants do not contest the admissibility of Chalmers' opinion concerning the fair market value of the easement taken or the rental of the temporary construction easement, so they are admissible.

---

[39] Doc. 168-2 at p. 22.

## IV.  CONCLUSION

For the reasons set out above, plaintiff's motion at docket 149 to exclude the expert report and opinion of Ian R. Dowdy is **GRANTED,** plaintiff's motion at docket 150 to exclude the expert opinion and report of Douglas Wolf is **GRANTED**, and plaintiff's motion at docket 151 to exclude the expert opinion and report of James Chalmers regarding severance damages based on an 800-foot safety zone and any resulting reduction in the value of the subject property is **GRANTED**.

DATED this 26th day of April 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE